**NORWEST BANK MINNEAPOLIS, Respondent,**

v.

**Raymond C. RUTLEDGE, et al., Appellants.**

**No. C8-87-223.**

Court of Appeals of Minnesota.

June 9, 1987.

Review Denied Aug. 12, 1987.

Charles L. Horn, Steven L. Severson, Terri K. Simard, Faegre & Benson, Minneapolis, for respondent.

Raymond C. Rutledge, et al., pro se.

Considered and decided by POPOVICH, C.J., WOZNIAK and LESLIE, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a summary judgment and order denying appellants' motion to vacate summary judgment which enforced a debt due under a promissory note and directed the sale of mortgaged property. In addition to claiming summary judgment is improper because genuine issues of material fact exist, appellants, pro se, claim the promissory note and mortgage are void because (1) respondent charged usurious interest rates, (2) the agreed interest rate tied to respondent's prime rate is ambiguous, and (3) respondent improperly secured the note with a third mortgage. We affirm.

## FACTS

On April 13, 1984, appellants Margaret E. Rutledge and Raymond C. Rutledge borrowed $80,000 for business purposes from respondent Norwest Bank, a national banking association. Appellants signed a promissory note promising to pay respondent the loan amount on demand plus interest computed at 2% above respondent's prime rate, not to exceed 21.75%. The note was secured by a third mortgage on appellants' property. When respondent demanded the

principal and interest accrued on the note, appellants defaulted and this foreclosure action was commenced.

Following respondent's motion for summary judgment, on October 8, 1986 a hearing was held at which appellants asserted two defenses. First, appellants claimed respondent charged usurious interest because the rates exceeded limits defined under Minnesota Statutes. Second, appellants claimed respondent overcharged interest based on their interpretation of "prime rate" as specified in the note. In connection with these defenses, appellants argued material fact issues existed regarding the amount of overcharged interest. In written arguments submitted after the hearing, appellants raised a third defense claiming respondent improperly took a third mortgage on appellants' property.

The trial court granted respondent's motion for summary judgment by concluding no genuine issues of material fact existed and appellants' defenses failed as a matter of law. Appellants' motion to vacate summary judgment was denied by order filed December 23, 1986. Appeal is from both the November 13, 1986 summary judgment and December 23, 1986 order pursuant to Minn.R.Civ.App.P. 103.04.

## ISSUES

1. Did the trial court err in concluding no genuine issues of material fact existed?

2. Did the trial court err in concluding the interest rate charged was not usurious?

3. Did the trial court err by interpreting "prime rate" as unambiguous?

4. Did the trial court err in concluding respondent was not prohibited from taking a third mortgage on appellants' property?

## ANALYSIS

1. In reviewing an entry of summary judgment, this court applies the same standard the trial court uses in deciding whether to grant summary judgment and determines (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of law. *Lindner v. Lund,* 352 N.W.2d 68, 70 (Minn. Ct.App.1984).

Although admitting the facts asserted in respondent's summary judgment motion, appellants claim additional material facts remain at issue because the amount of overcharged interest has not yet been determined. The materiality of this claimed factual issue depends upon whether, as a matter of law, respondent overcharged interest. *See Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259 (1976) (per curiam) ("material fact" defined as one which will affect case's outcome).

2. Appellants claim the allowable interest rate on business loans of less than $100,000 is exclusively determined by Minn. Stat. § 334.011 (1984). That statute states:

Subdivision 1. Notwithstanding the provisions of any law to the contrary a person may, in the case of a contract for the loan or forbearance of money, goods, or other things in action in an amount of less than $100,000 for business or agricultural purposes, charge interest at a rate of not more than *four and one-half percent in excess of the discount rate on 90 day commercial paper* in effect at the Federal Reserve bank in the Federal Reserve district encompassing Minnesota.

\*     \*     \*     \*     \*     \*

Subd. 2. If a greater rate of interest than that permitted by subdivision 1 is charged then the entire *interest* due on that note, bill or other evidence of debt *is forfeited.* \* \* \*

Minn.Stat. § 334.011, subds. 1, 2 (1984).

Respondent argues it properly charged rates permissible under Minn.Stat. § 53.04 pursuant to the most favored lender doctrine. That statute gives industrial loan and thrift companies:

The right to extend credit or lend money and to collect and receive charges therefor as provided by chapter 334, or in lieu thereof to charge, collect, and receive interest at the rate of 21.75 percent per annum.

Minn.Stat. § 53.04, subd. 3a(a) (1984). The interest rates charged by respondent did not exceed 15%.

The most favored lender doctrine allows a national bank to charge "the highest permissible rate within the same class or type of loan or credit." *First Bank East v. Bobeldyk*, 391 N.W.2d 17, 19 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Sept. 24, 1986). In this case, the trial court determined appellants' business loan is of the same class or type as that made by an industrial loan and thrift company and therefore the interest rate charged was proper.

Appellants argue the most favored lender doctrine does not apply in this case, relying on *First Bank (N.A.) Pipestone v. Farmer,* No. 84–13914 (Pipestone Dist.Ct. Mar. 19, 1985) (order vacating default judgment). That trial court vacated a default judgment on an agricultural loan by questioning the validity of interest rates exceeding the maximum rate established in Minn. Stat. § 334.011, subd. 1. But this court subsequently held section 53.04, subdivision 3a applies to all of chapter 334, and therefore industrial loan and thrifts, as well as most favored lender banks, may charge 21.75% interest on agricultural loans. *Dahl v. Lanesboro State Bank*, 399 N.W.2d 621 (Minn.Ct.App.1987), *pet. for rev. denied,* (Minn. Mar. 25, 1987). Since chapter 334 refers to both agricultural and business loans, the same holding applies in this case. Appellants' argument regarding usurious interest rates fails.

3. Appellants claim the promissory note's definition of "prime rate" is ambiguous and by their interpretation of that term, respondent overcharged interest. The promissory note defines "prime rate" as "the rate of interest publicly announced by the Bank from time to time as its Prime Rate." Appellants assert that definition means the lowest rate of interest charged by respondent.

"Whether a contract is ambiguous is a legal determination in the first instance." *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982); *Fena v. Wickstrom,* 348 N.W.2d 389, 390 (Minn.Ct.App.1984). "A writing is ambiguous if, judged by its language alone and without resort to parol evidence, it is reasonably suscepti-

ble of more than one meaning." *Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973).

*Briggs Transportation Co. v. Second Northwestern National Bank,* 406 N.W.2d 7 (Minn.Ct.App.1987).

In *Briggs Transportation,* we concluded the loan agreement unambiguously defined "prime rate" as the lowest interest rate regularly charged by the bank on "large business" loans to corporate commercial borrowers of the highest credit rating, and the term was not based on the announced prime rate. Here, "prime rate" is clearly defined as the announced prime rate and the term is not reasonably susceptible of another meaning. The trial court did not err in concluding the promissory note's interest rate was not ambiguous.

4. Appellants claim respondent improperly secured the promissory note by taking a third mortgage on appellants' property. They cite Minn.Stat. § 48.18 (1984) which provides:

No bank or trust company shall pledge or hypothecate or create a lien upon or charge against any of *its assets* subject to a prior lien, hypothecation, or charge.

*Id.* (emphasis added). Appellants' reliance on this provision is misplaced because it applies to property of a bank and not its customers.

Appellants claim respondent also violated Minn.Stat. § 48.19, subd. 1 (1984) (repealed 1985), which provided:

*No bank or trust company shall make any loan upon the security of real estate unless it is a first lien thereon,* except that a bank or trust company may take a junior lien: (a) upon real estate to secure a loan previously contracted; (b) upon farm real estate to secure a loan made to a farmer who resides in a county which due to weather conditions is a declared federal disaster area at the time the loan contract is signed; or (c) upon real estate to secure a loan if the total unpaid aggregate of all outstanding liens against the real estate does not exceed 80 percent of its appraised value. This limitation applies

notwithstanding the provisions of sections 47.20, subdivision 1 and 47.21 as to loans, advances of credit, or participations in loans eligible for purchase in whole or in part by the federal national mortgage association or the federal home loan mortgage corporation or which are authorized by the federal home loan bank board or office of the comptroller of the currency. *Before these loans are made the value of the real estate must be determined by an appraisal made by a committee appointed by the board of directors,* but the board may accept an appraisal made by or for an agency of the United States government if the agency is guaranteeing or insuring the loan or any part thereof. The appraisal must be made a matter of record.

*Id.* (emphasis added). Appellants argue respondent violated this 1984 provision not only by taking a third mortgage, but by failing to obtain the required appraisal.

■ As a national banking association, however, respondent is governed by federal law, not state law. In 1984, section 48.19 was preempted by federal law which placed no restrictions on national banks in advancing loans secured by mortgages on real estate. The United States Code provides:

Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to such terms, conditions, and limitations as may be prescribed by the Comptroller of the Currency by order, rule, or regulation.

12 U.S.C.A. § 371(a) (West Supp.1987). Further, the Code of Federal Regulations specifically preempts state law limitations on loans secured by real estate mortgages.

(a) *National banks may proceed under 12 U.S.C. 371 and § 34.1 without regard to state law limitations as to:*

(1) The amount of a loan in relation to the appraised value of the real estate;

(2) The schedule for the repayment of principal and interest;

(3) The term to maturity of the loan;

(4) The aggregate amount of funds which may be loaned upon the security of real estate; and

(5) The covenants and restrictions which must be contained in a lease to qualify the leasehold as acceptable security for a real estate loan.

*Limitations imposed on paragraphs (a)(1) through (5) of this section directly or indirectly by law or judicial decisions of any state * * * are hereby expressly preempted.*

12 C.F.R. § 34.2(a) (1984) (emphasis added). Therefore, Minn.Stat. § 48.19 (1984) did not bar respondent from taking a third mortgage on appellants' property.

In further support of their argument, appellants rely on Op. Att'y Gen. No. 29–A–20 (November 20, 1947), which explains the state law limitations under Minn.Stat. § 48.19, but does not address federal preemption. In addition, appellants cite *Borkus v. Michigan National Bank,* 117 Mich. App. 662, 324 N.W.2d 123 (1982), where the Michigan Court of Appeals held a national bank could not rely on 12 U.S.C. § 371(a)(1) (1982) in taking a second mortgage *prior* to 1974 when the section had not yet been amended to permit subsequent mortgages. Reliance on that case is misplaced since the mortgage here occurred in 1984, ten years *after* amendment.

■ 5. Appellants argue respondent violated additional state and federal lending requirements which are inapplicable to their particular loan. Further, these arguments are raised for the first time on appeal. *See Gruenhagen v. Larson,* 310 Minn. 454, 457, 246 N.W.2d 565, 568 (1976) ("assignments of error which have not been presented to the trial court for consideration will not be reviewed on appeal").

**DECISION**

The trial court did not err in concluding no genuine issues of material fact existed and appellants' defenses fail as a matter of law. Summary judgment was therefore proper.

Affirmed.